# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 6, 2014          Decided June 10, 2014

No. 13-5200

PRIME TIME INTERNATIONAL COMPANY,
APPELLANT

v.

UNITED STATES DEPARTMENT OF AGRICULTURE AND THOMAS
J. VILSACK, SECRETARY OF AGRICULTURE,
APPELLEES

Consolidated with 13-5204

Appeals from the United States District Court
for the District of Columbia
(No. 1:06-cv-01077)
(No. 1:12-cv-00910)

*Jerry Stouck* argued the cause and filed the briefs for appellant. *Precious M. Gittens* entered an appearance.

*Sydney A. Foster*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen*, Jr., U.S. Attorney, and *Mark B. Stern*, Attorney.

2

Before: HENDERSON, ROGERS, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: The Fair and Equitable Tobacco Reform Act directs the U.S. Department of Agriculture to fund a subsidy program for tobacco growers by imposing monetary assessments on manufacturers of tobacco products. In this case, one such manufacturer argues that USDA's method of calculating assessments for cigars violates the Act. The district court disagreed, concluding that the Department's approach represented a reasonable interpretation of the Act. We affirm.

**I.**

Section 518d of the Fair and Equitable Tobacco Reform Act (FETRA) requires USDA to impose monetary assessments on tobacco product manufacturers and importers pursuant to a three-step process. *See* 7 U.S.C. § 518d. First, USDA must calculate the total monetary assessment needed to fund the subsidy program. *See id.* § 518d(b)(1)–(2). Second, the Department must apportion this amount among six classes of tobacco products—cigarettes, cigars, snuff, roll-your-own, chewing, and pipe—based, in part, on each class's share of the gross domestic volume of tobacco products. *See id.* § 518d(c). Third, under subsection (e)—the focus of this case—USDA must divide each class's assessment among the manufacturers and importers within each class "on a pro rata basis . . . based on each manufacturer's and importer's share of gross domestic volume." *Id.* § 518d(e)(1). Under subsections (f) and (g), USDA "shall . . . determine[]" this amount based on the manufacturer's or importer's "market share" of "the class of tobacco product," *id.* § 518d(f), which the Department "shall .

3

. . . measure[] by[,] in the case of cigarettes and cigars, the number of cigarettes and cigars; and[] in the case of the other classes of tobacco products . . . in terms of number of pounds," *id.* § 518d(g)(3). In accordance with this three-step process, USDA promulgated the so-called Per Stick Rule, under which it calculates each cigar manufacturer's assessment based on the number of cigars—also known as "sticks"—that the manufacturer puts into commerce. *See* 7 C.F.R. § 1463.7.

Appellant Prime Time, a manufacturer of small cigars, challenged the Per Stick Rule in district court, arguing that the Rule's equal treatment of small and large cigars violated subsection (e)'s "pro rata basis" requirement. According to Prime Time, subsection (e) requires the Department to account for large and small cigars' different tobacco volume by subdividing the cigar assessment between large and small cigar manufacturers and then allocating the assessment within each subclass based on the number of cigars sold. The district court dismissed the case, but in *Prime Time International Co. v. Vilsack*, 599 F.3d 678 (D.C. Cir. 2010) ("*Prime Time I*"), this court held, contrary to USDA's position at the time, that the Per Stick Rule was "not mandated by the plain text of FETRA." *Id.* at 683. Observing that the Act "does not appear to be susceptible of only a single interpretation" and recognizing that "USDA [did] not maintain that its interpretation of FETRA [was] a permissible view of an ambiguous statute entitled to deference under *Chevron* step 2," we remanded to the district court with instructions to return the issue to the Department for further proceedings. *Id*.

USDA then solicited public comments on the question of whether it should revisit the Per Stick Rule. After considering the comments, it issued a "Determination" in which it concluded that its calculation "methodology [was] the optimal

4

reading of FETRA" and accordingly declined to revise the Rule. *See* Determination of the Administrator of the Farm Services Agency and Executive Vice President of the Commodity Credit Corporation Regarding the Current "Step A" and "Step B" Assessment Methods in the Tobacco Transition Payment Program at 20 (Nov. 16, 2011) ("Determination"). USDA explained that the Rule implements the statute's language by interpreting subsection (e)(1) "to set the general rule" and subsections (f) and (g) to "inform [it] and direct [it] on how to implement the general rule of (e)." *Id.* at 30. As to cigars in particular, the Department explained that "the cigar class allocation is . . . properly allocated on a 'pro rata' basis among manufacturers and importers based on each manufacturer's or importer's . . . proportion of the total [number of] cigar sticks" moved into commerce. *Id.*

Following several procedural developments not relevant to the question before us, the issue returned to the district court—now Judge Royce C. Lamberth—who upheld the Rule as a reasonable interpretation of an ambiguous statute. Prime Time again appeals.

## II.

This court hears many complex and difficult cases. This is not one of them.

Prime Time's first argument—that *Prime Time I* barred the Department from maintaining the Per Stick Rule on remand—completely misreads that decision. As Judge Lamberth explained, *Prime Time I* "remanded the case to USDA so it could properly exercise agency expertise, and took no position on whether the current per-stick rule could be permissible under *Chevron* step 2." *Prime Time International Co. v. Vilsack*, 930 F. Supp. 2d 240, 251 (D.D.C. 2013); *see also Prime Time I*, 599 F.3d at 683 ("For the purpose of this

5

appeal, the court need only observe that USDA's present interpretation is not mandated by the plain text of FETRA."). On remand, USDA did exactly what we asked of it, and the only question now before us is whether the Per Stick Rule represents a reasonable interpretation of the Act. *See Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 843 (1984).

Prime Time insists that USDA's interpretation deserves no *Chevron* deference because the Department's justification for maintaining the Per Stick Rule was "not developed in a rulemaking proceeding but only in the course of this litigation, to justify USDA's litigation position." Appellant's Br. 51. This argument ignores not one but two lines of this court's well-established case law: decisions affording *Chevron* deference to agency actions that resolve "'interstitial . . . legal question[s]'" related to an agency's expertise regardless of whether the agency engaged in formal rulemaking, *e.g.*, *Mylan Laboratories, Inc. v. Thompson*, 389 F.3d 1272, 1279–80 (D.C. Cir. 2004) (quoting *Barnhart v. Walton*, 535 U.S. 212, 222 (2002)), and cases deferring to reasoned agency decisions made in response to remands, *e.g.*, *PDK Laboratories*, *Inc. v. Drug Enforcement Agency*, 438 F.3d 1184, 1189 (D.C. Cir. 2006) (deferring to agency position developed following remand). The only authority cited by Prime Time, *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 212–13 (1988), bars deference to statutory interpretations offered by appellate counsel for the first time on appeal—hardly the situation we face here.

We turn, then, to the heart of this case. Prime Time contends that the Rule's failure to "account for the differing tobacco volumes between large and small cigars" ignores subsection (e)'s "pro rata basis" requirement. Appellant's Br. 29 (emphasis omitted). This is so, Prime Time tells us,

6

because the word volume means "'the amount of space occupied by a three-dimensional object or region of space, expressed in cubic units'" and because subsection (e) mandates a "pro rata" distribution based on each manufacturer's or importer's "share of gross domestic volume." *Id.* (quoting THE AMERICAN HERITAGE DICTIONARY 1928 (4th ed. 2006)). This argument rests on a flawed premise: that volume as used in subsection (e) must mean the amount of tobacco in a tobacco product. As USDA points out, however, "volume" also means "quantity." And crucially for our purposes, quantity can be measured in different units for different products. For an example, we need look only to subsection (g), which directs USDA to measure the "volume of domestic sales" in sticks for cigarettes and cigars and in pounds for the other tobacco product classes. *See* 7 U.S.C. § 518d(g). USDA's decision to read the word "volume" in subsection (e) as Congress used it in subsection (g) is entirely reasonable and fully implements subsection (e)'s "pro rata basis" requirement.

Nor is USDA's interpretation of the statutory term "share of gross domestic volume" "internally inconsistent." Appellant's Br. 46. According to Prime Time, USDA interprets this phrase to have a "common metric"—i.e., not sticks *and* pounds—when it divides the total assessment among the six classes but maintains, contradictorily, that the phrase lacks a common metric when it calculates each manufacturer's "share of gross domestic volume." This argument also rests on a false premise. USDA does not use a common metric to calculate each class's "share of gross domestic volume." Instead, as it explained in the Determination, the Department first calculates each class's share of gross domestic volume without using a common metric—"some [products] are measured by weight and others by stick count"—and then, to determine the class assessments,

7

it "*converts*" these "different measures . . . into a common metric." Determination at 5 (emphasis added). In other words, at both allocation stages USDA treats "share of gross domestic volume" as lacking a common metric.

Prime Time next claims that the Per Stick Rule violates the canon against surplusage because under USDA's interpretation the Act would have the exact same meaning if Congress had omitted subsection (e) entirely. As the Department points out, however, subsection (e) does have a function: it sets forth a general rule—assessments shall be pro rata—and subsections (f) and (g) then explain how this rule applies to each tobacco product class. Although subsection (e) may have little independent operative effect, USDA's interpretation of subsection (e) as setting forth a general requirement is perfectly reasonable. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004) (noting that the "preference for avoiding surplusage constructions is not absolute"). "[S]ometimes Congress . . . drafts [statutory] provisions that appear duplicative of others . . . simply, in Macbeth's words, to make assurance double sure." *Shook v. D.C. Financial Responsibility & Management Assistance Authority*, 132 F.3d 775, 782 (D.C. Cir. 1998).

Lastly, Prime Time insists that its interpretation gives more effect to subsection (e)'s pro rata basis limitation than does USDA's. Rejecting this argument and invoking a fundamental principle of *Chevron* review, Judge Lamberth explained that "[a]s long as the agency's interpretation of . . . ambiguous language is reasonable, it does not matter whether Prime Time's interpretation is 'more' reasonable." *Prime Time*, 930 F. Supp. 2d at 259 (citing *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 980 (2005)). We have nothing to add.

8

## III.

Having considered and rejected Prime Time's remaining arguments, we affirm.

*So ordered.*